# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **EMILY DAHL, HANNAH REDOUTE, BAILEY KORHORN, and MORGAN OTTESON,** | **BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND CERTIFICATE OF COMPLIANCE** |
| Plaintiffs, | |
| -vs- | |
| **THE BOARD OF TRUSTEES OF WESTERN MICHIGAN UNIVERSITY; EDWARD MONTGOMERY**, President of WMU; **KATHY BEAUREGARD**, WMU Athletic Director; and **TAMMY L. MILLER**, Associate Director of Institutional Equity, | CASE NO.:_____  HON.: _____ |
| Defendants._____/ | |

**GREAT LAKES JUSTICE CENTER:**
David A. Kallman           (P34200)
Stephen P. Kallman        (P75622)
Erin E. Mersino              (P70886)
Jack C. Jordan                (P46551)
**Attorneys for Plaintiffs**
5600 W. Mount Hope Hwy.
Lansing, MI 48917
(517) 322-3207

# ISSUE PRESENTED

Whether Defendants' policy that all student athletes must be vaccinated and the denial of Plaintiffs' request for reasonable accommodations, violates Plaintiffs' statutory and constitutional rights guaranteed by the United States and Michigan Constitutions, thereby causing irreparable harm sufficient to warrant the requested injunctive relief.

# INTRODUCTION

*"But a Constitution of Government once changed from Freedom, can never be restored.  Liberty once lost is lost forever."*
John Adams

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs seek a Temporary Restraining Order (TRO) and preliminary injunction to immediately enjoin the enforcement of Defendants' policy that all student athletes must be vaccinated in order to participate in intercollegiate athletics.  More specifically, Plaintiffs seek the following:

- An order that Defendants are enjoined from enforcing their mandated COVID-19 Vaccination Requirement Policy against Plaintiffs or to take any action against Plaintiffs because of their vaccination status.

- An order that Defendants are enjoined from requiring that Plaintiffs be vaccinated prior to participating in any intercollegiate sporting activities.

- As a reasonable accommodation, an order that Plaintiffs shall submit to reasonable weekly COVID-19 testing to be provided by Defendants.[1]

# STATEMENT OF FACTS[2]

This case seeks to protect and vindicate statutory, and fundamental constitutional rights. Plaintiffs bring a civil rights action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, for breach of contract, and for other statutory and constitutional violations, challenging Defendants' acts, policies, practices, customs, and procedures, which deprived Plaintiffs of their First Amendment rights, their right to Due Process, and their Fourteenth Amendment liberty right to privacy, self-autonomy and personal identity,

---

[1] A proposed TRO has been submitted with this brief.
[2] Plaintiffs' declarations are attached to this brief as Exhibits J, K, L, and M.

- 1 -

including the right to reject government mandated medical treatment. Defendants unjustly discriminate against Plaintiffs because of their sincerely held religious beliefs and their viewpoints by mandating that they must take the Covid-19 vaccine in order to participate on Defendants' college soccer team.

Specifically, Defendants' vaccine mandate seeks to override Plaintiffs' sincerely held religious beliefs and viewpoint and discriminates against them on the basis of their religion. As set forth in the Complaint, the policies, practices, customs, and procedures of Defendants (hereinafter "WMU") were the cause of, and the moving force behind, the statutory, contractual, and constitutional violations in this case.

Plaintiff Emily Dahl is a student at WMU and is studying Healthcare Services & Science. She is a Defender on the WMU soccer team and is on athletic scholarship. Emily regularly makes the Dean's List and is an Academic All-MAC

Plaintiff Hannah Redoute is a student at WMU and is studying Accounting. She is a Forward on the WMU soccer team and is on athletic scholarship. Hannah regularly makes the Dean's List and is an Academic All-MAC

Plaintiff Bailey Korhorn is a student at WMU and is studying Accounting. She is a Center Midfielder and Team Captain on the WMU soccer team and is on athletic scholarship. Bailey regularly makes the Dean's List and is an Academic All-MAC.

Plaintiff Morgan Otteson is a student at WMU and is studying Accounting. She is a Forward and Team Captain on the WMU soccer team and is on athletic scholarship. Morgan was First Team All-MAC in 2019. She also regularly makes the Dean's List, is an Academic All-MAC, and a MAC Distinguished Scholar Athlete.

Plaintiffs are Christian people who adhere to the teachings of the Bible and are morally bound to follow the universal, consistent moral teaching of the Christian faith. All Plaintiffs find their dignity, personal identity, and autonomy in the exercise of their sincerely held Christian religious beliefs. Plaintiffs oppose the medical mandates now being forced upon them by Defendants, and the resulting violation of Plaintiffs' statutory and constitutional rights. Plaintiffs are devoted Christian people who sincerely believe the Bible's teachings and sincerely hold Christian beliefs that preclude them for taking the COVID -19 shot. As part of their personal identity and autonomy, Plaintiffs sincerely believe that they have a duty and obligation to live out their faith in all areas of life, including personal medical decisions. Defendants' policies punish them for exercising their constitutionally and statutorily protected rights to make their own religious and medical decisions in consultation with their doctors and other medical professionals.

Defendants adopted a policy, practice, custom, and procedure on August 12, 2021, requiring and forcing Plaintiffs to take one of the Covid-19 vaccines by August 31, 2021, or be removed from their positions on the WMU women's soccer team and lose their right to participate in intercollegiate athletics.

Plaintiffs were informed that they would get an email with procedures to be followed by the end of the following week. Defendants failed to send the promised procedures, so Plaintiffs took the initiative and on August 24, 2021, wrote to Defendants requesting that the procedures be disclosed. On August 24, 2021, Plaintiffs received a link to the procedures, including the right to request an exemption to the new policy on the basis of their religious beliefs. On August 24 and 25, 2021, Plaintiffs submitted their religious exemption requests. Plaintiffs stated their sincerely held Christian beliefs to Defendant and explained to Defendants why these sincerely held beliefs prevented them from taking the COVID-19 shot.

On August 25, 2021, Defendants denied the requested religious exemptions for three of the Plaintiffs and stated the following:

> The University has a compelling interest in taking action to avoid the significant risk posed to the intercollegiate athletic programs of a Covid-19 outbreak due to unvaccinated participants and prohibiting unvaccinated members of the teams from engaging in practices and competition is the only effective manner of accomplishing this compelling interest.[3]

On August 26, 2021, Plaintiffs submitted a written request for an explanation for the denials and for information on their right to appeal the denial. On August 26, 2021, Defendants made clear that the denial was not due to the insufficiency or insincerity of Plaintiff's religious beliefs. On August 30, 2021, Defendants denied the final Plaintiff's accommodation request for the same reason.

Defendants informed Plaintiffs their decision was final and there was no further appeal available to them at WMU. The NCAA does not require Defendants to implement this policy mandating a medical treatment in order to participate in intercollegiate athletics.

In addition, Defendants do not require the general student body at WMU to be vaccinated in order to be physically present on campus, to attend school, to attend intercollegiate athletic events, to live in the dorms, or to participate in any other educational programs at WMU.

Defendants adopted, authorized, mandated, and approved these policies, which force Plaintiffs to take the vaccine shot in direct opposition to, and in violation of, Plaintiffs' personal identity, autonomy, and their sincerely held religious beliefs and convictions, and in violation of federal and state statutes and constitutional provisions.

Defendants' policies, practices, customs, and procedures encourage school officials, and others, to silence and disparage opinions, ideas, and viewpoints that disagree with its medical

---

[3] Exhibits F, G, H, and I.

determination made without consulting with Plaintiffs' doctors or accommodating Plaintiffs religious objections.

Plaintiffs now seek this emergency relief to prevent the irreparable harm of being kicked off of the WMU athletic teams if they do not submit to the vaccination requirement by August 31, 2021.

## ARGUMENT

**I.  Standard for Issuing a TRO/Preliminary Injunction.**

"The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the *status quo*." *Reid v. Hood*, No. 1:10CV2842, 2011 U.S. Dist. LEXIS 7631, at *4-5 (N.D. Ohio Jan. 26, 2011) (citing *Motor Vehicle Bd. of Cal. v. Orrin W. Fox, et al.*, 434 U.S. 1345, 1347 n. 2 (1977)).

The standard for issuing a preliminary injunction is well established:

> In determining whether or not to grant a preliminary injunction, a district court considers four factors: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest.

*Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (same). Plaintiffs satisfy each of the elements and their entire goal of this motion is to maintain the *status quo*, i.e. keep Plaintiffs on WMU's athletic teams while this litigation is pending.

## II. Plaintiffs Satisfy the Standard for Granting the Requested Injunctive Relief.

### A. Plaintiffs' Likelihood of Success on the Merits.

While Plaintiffs are only required to show a likelihood of success on the merits for one of the Counts, Plaintiffs believe they have a strong likelihood of success on the merits of all of their counts in the Complaint.

#### 1. Counts I and IV – Free Exercise of Religion Violation.

The United States and Michigan Constitutions require the government to regulate with precision. As stated by the Supreme Court:

> In pursuing that important interest, the State cannot choose means that unnecessarily burden or restrict constitutionally protected activity. Statutes affecting constitutional rights must be drawn with "precision," . . . and must be "tailored" to serve their legitimate objectives. . . . And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose "less drastic means."

*Dunn v. Blumstein*, 405 U.S. 330, 343 (1972); see also *Aptheker v. Sec. of State*, 378 U.S. 500, 508 (1964) ("Even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose.") (quoting *NAACP v. Ala.*, 377 U.S. 288, 307-08 (1964)).

"The principle that government may not enact laws that suppress religious belief or practice is . . . well understood." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 523 (1993) ("*Lukumi*"). In *Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015), the *en banc* court stated:

> The right to free exercise of religion includes the right to engage in conduct that is motivated by the religious beliefs held by the individual asserting the claim. . . .

> The government cannot prohibit an individual from engaging in religious conduct that is protected by the First Amendment. . . .

*Id. at 255-56.*

A law that discriminates against religious practices or beliefs usually will be invalidated because it is the rare law that can be "justified by a compelling interest and is narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 553. In *Lukumi*, for example, the Court struck down on free exercise grounds a law that prohibited animal sacrifice. The law permitted some animal killings as "necessary," but deemed the ritual, religious killing of an animal as unnecessary and thus criminal, in violation of the Free Exercise Clause. *Id*. Under the Michigan Constitution, any law that substantially burdens religious exercise must satisfy strict scrutiny. *Porth v. Roman Catholic Diocese of Kalamazoo*, 209 Mich. App. 630 (1995).

When evaluating Plaintiffs' free exercise claim, it is not the government's nor the Court's role to question the validity of Plaintiffs' religious convictions. As stated by the U.S. Supreme Court, "Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation." *Thomas v. Review Bd.*, 450 U.S. 707, 716 (1981). Consequently, Plaintiffs deeply held religious conviction that compels them to not receive a Covid-19 vaccine is beyond question by the government or this Court. The religious conviction requiring Plaintiffs to adhere to their faith is also beyond the function of this Court (or a public university) to question.

While Defendants concede in their denial of Plaintiffs' religious accommodation request that they are subject to the strict scrutiny test requiring a compelling governmental interest and to use the least restrictive means (Exhibits F, G, H, and I), Defendants cannot meet such a rigorous

standard.[4] This is apparent from Defendants own conduct. Defendants are not requiring that all students at WMU receive the vaccine, whether or not they live on campus. Defendants are not requiring that students participating in any other educational activity or being at any locations that also might spread Covid-19 also be vaccinated, such as cafeterias, intramural sports, classes/class projects, band/choir, showers/restrooms, etc. Further, it is difficult to comprehend how Defendants in this matter claim that they have such a compelling interest in forced vaccination as to deny all religious accommodation requests, but other Universities, such as the University of Michigan[5], or Michigan State University,[6] are providing for such religious accommodations. If other Michigan universities do not have a compelling interest to deny all religious accommodation requests, then neither does Defendants.

Indeed, because Defendants provide a medical exemption to the Covid-19 vaccine, the First Amendment demands a religious exemption as well. The Sixth Circuit held:

> A double standard is not a neutral standard. See *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 365-67 (3d Cir.1999) (Alito, J.) (invalidating a police department policy that barred officers from growing beards and holding that the policy could not take refuge in the Smith safe harbor because it excepted officers who could not shave for medical reasons but not officers who could not shave for religious reasons).

*Ward v. Polite*, 667 F.3d 727, 740 (6th Cir. 2012). If Defendants can provide secular medical accommodations, then they must be required to provide religious accommodations.

Finally, Defendants' conduct is not utilizing the least restrictive means. For example, the University of Michigan's policy provides that anyone who receives an accommodation must adhere to the following policy:

---

[4] Because Defendants conceded they must have a compelling interest and must use the least restrictive means in order to deny Plaintiffs' religious accommodation requests (Exhibit F, G, H, and I), this case is not governed by *Employment Div. v. Smith*, 494 U.S. 872 (1990).
[5] https://record.umich.edu/articles/university-accepting-limited-exemptions-to-vaccine-mandate/
[6] https://msu.edu/together-we-will/covid19-vaccine/exemptions.html

> Individuals approved for an exemption will be required to participate in weekly COVID-19 testing and adhere to the university's face-covering policy, which currently requires masks indoors for unvaccinated individuals.[7]

Other universities in Michigan are using a less-restrictive means to accomplish their goal of preventing the spread of Covid-19, all while honoring students' First Amendment rights. Defendants should do the same.

The challenged conduct violates Plaintiffs' right to the free exercise of religion because Defendants do not have a compelling interest to require Covid-19 vaccination with no religious accommodations, and Defendants have not utilized the least restrictive means to accomplish their goal. Therefore, Plaintiffs are likely to succeed on their First Amendment claims.

### 2. Count II – Right to Privacy, Personal Autonomy, and Personal Identity.

The United States Supreme Court established the fundamental right to personal autonomy and identity in *Obergefell v. Hodges*, 576 U.S. 644, 135 S.Ct. 2584 (2015) when the Court held:

> Under the Due Process Clause of the Fourteenth Amendment, no State shall " deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. See *Duncan v. Louisiana*, 391 U.S. 145, 147-149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). **In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs.** See, e.g., *Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); [135 S.Ct. 2598] *Griswold v. Connecticut*, 381 U.S. 479, 484-486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).
>
> The identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution. That responsibility, however, " has not been reduced to any formula." *Poe v. Ullman*, 367 U.S. 497, 542, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting). Rather, it requires courts to exercise [192 L.Ed.2d 624] reasoned judgment in identifying interests of the person so fundamental that the State must accord them its respect. See ibid. That process is guided by many of the same considerations relevant to analysis of other constitutional provisions that set forth broad principles rather than specific

---

[7] https://record.umich.edu/articles/university-accepting-limited-exemptions-to-vaccine-mandate/

> requirements. History and tradition guide and discipline this inquiry but do not set its outer boundaries.

*Id*. at 2597-98 (emphasis added).

While the Plaintiffs in *Obergefell* found their personal identity in their sexual orientation, Plaintiffs in this case find their personal identity in their religious faith. Plaintiffs' beliefs inform all of their decisions and are central to their personal autonomy. Defendants' vaccine requirement violates Plaintiffs' right to their own personal identity and personal autonomy. One of the most intimate choices a person can make is the determination of what medical procedures they will undergo or what medications they will take. Defendants' conduct infringes on Plaintiffs rights and thus is subject to a strict scrutiny analysis.

> The Seventh Circuit Court of Appeals, citing the United States Supreme Court, held:
>
> Because any medical procedure implicates an individual's liberty interests in personal privacy and bodily integrity, **the Supreme Court has indicated that there is "a general liberty interest in refusing medical treatment**." *Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (citing *Vitek v. Jones*, 445 U.S. 480, 494 (1980); *Parham v. J.R.*, 442 U.S. 584, 600 (1979)); see also *Cruzan*, 497 U.S. at 309 (Brennan, J., dissenting) (**"The right to be free from unwanted medical attention is the right to evaluate the potential benefit of treatment and its possible consequences according to one's own values and to make a personal decision whether to subject oneself to the intrusion."**). In this case, the defendant was not allowed to refuse medical treatment or to determine the course of his own care.

*U.S. v. E. Husband*, 226 F.3d 626, 632 (7th Cir. 2000) (emphasis added). In this case, Defendants have infringed on Plaintiffs' liberty interest in refusing medical treatment. Because the right to personal privacy, bodily integrity, and personal autonomy are fundamental, Defendants' actions require a strict scrutiny analysis.

Plaintiffs incorporate the same strict scrutiny analysis outlined above which demonstrates that Defendants do not have a compelling interest and are not using the least restrictive means.

Therefore, Defendants have violated Plaintiffs right to personal identity and autonomy, and Plaintiffs are likely to succeed on the merits.

### 3. Count III – Discrimination in Places of Public Accommodation.

42 U.S.C. § 2000a(a) states:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

The statute further states:

> (b) Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:
>
>> (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment;

Defendants have discriminated against Plaintiffs by denying them the "goods, services, facilities, privileges, advantages, and accommodations" of their public accommodation on the ground of Plaintiffs' religious faith. Indeed, if Plaintiffs disregarded their religious faith and received the vaccine, they would then be permitted to remain on the athletic team and participate in intercollegiate sports.

Defendants are a public accommodation because, relevant here, they are a public university that has stadiums, sports arenas, and is a place of intercollegiate soccer exhibition and entertainment. All four Plaintiffs are on Defendants' intercollegiate soccer team and previously had access to Defendants' stadiums, sports arenas, and places of soccer exhibition. If Defendants' policies are permitted to stand, Plaintiffs will be shut out from those public accommodations on August 31, 2021, solely because they refuse to violate their religious faith and receive a vaccine.

The statute also states:

> The operations of an establishment affect commerce within the meaning of this subchapter if . . . in the case of an establishment described in paragraph (3) of subsection (b), it customarily presents films, performances, **athletic teams**, **exhibitions**, or other sources of entertainment which move in commerce.

42 U.S.C. § 2000a(c) (emphasis added).

Defendants' operations in this case do affect commerce because they customarily present athletic teams and exhibitions, in particular, Plaintiffs' soccer team.

WMU is a public university and is prohibited from discriminating on the basis of religion pursuant to 42 U.S.C. § 2000a. Defendants have violated this federal statutory provision by discriminating against Plaintiffs by requiring that they violate a core religious belief in order to participate and benefit from Defendants' public accommodations. Therefore, Defendants have engaged in illegal religious discrimination and Plaintiffs are likely to succeed on the merits of this court as well.

### 4. Count V – Elliott-Larsen Civil Rights Act Violation.

Article I, §2 of the Michigan Constitution, WMU Policy 11-04, and the Elliott-Larsen Civil Rights Act (ELCRA) prohibit discrimination on the basis of religion. MCL 37.2101 et. seq.

Defendants operate their school as a place of public accommodation, as defined in Michigan's Elliott-Larsen Civil Rights Act (hereinafter referred to as ELCRA), MCL 37.2301(a)(iii) and are persons, as that term is defined in ELCRA, MCL 37.2103(g).

Defendants' implementation of its policies and procedures to mandate vaccinations for student athletes violate ELCRA and deprive Plaintiffs of their civil rights by subjecting Plaintiffs to conduct which has the purpose and effect of denying them the full benefit of the public accommodations and educational facilities at Defendants' school buildings, and denies them full and equal access to the use and privileges of its public accommodations and educational facilities, on the basis of religion.

The loss of participation in the athletic programs and activities at WMU discriminates "on the basis of religion," and violates Plaintiffs' rights under the policy and under ELCRA. Defendants' policies have the purpose or effect of substantially interfering with the Plaintiffs' right to access and utilize public accommodations and public services, including education and athletic participation, and creates an intimidating, hostile, or offensive public accommodation, public service, and educational environment for all the above-stated reasons.

The only reason Defendants are threatening to remove Plaintiffs from their intercollegiate teams is because they are refusing to take a vaccine in violation of their sincerely held religious beliefs. This is a clear violation of the Michigan Constitution, WMU Policy, and ELCRA, thus, Plaintiffs are likely to succeed on the merits.

**B.     Irreparable Harm to Plaintiffs without the TRO/Preliminary Injunction.**

The loss of a constitutional right, "for even [a] minimal period[ ] of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). As stated by the Sixth Circuit, "when reviewing a motion for preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury <u>*is mandated*</u>." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (emphasis added); *see also Newsome v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) ("The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.") (citing *Elrod*).

Because "a constitutional right is being threatened or impaired" in this case, "a finding of irreparable injury is mandated."

**C.     Whether Granting the TRO/Preliminary Injunction Will Cause Substantial Harm to Others.**

In this case, the likelihood of irreparable harm to Plaintiffs is substantial. In fact, such a finding is "mandated." *See supra*. Moreover, Plaintiffs are adhering to the social distancing measures recommended by the Centers for Disease Control and Prevention, thereby mitigating the harm to Defendants' objectives. Further, Plaintiffs are willing to comply with any reasonable alternative measures already implemented by other universities in this state, such as weekly Covid-19 testing and wearing masks indoors. Indeed, as noted above, it is the government that has the burden of justifying the challenged restrictions on Plaintiffs' fundamental liberties protected by the United States and Michigan Constitutions.

Providing religious accommodations will not cause substantial harm to others because less restrictive measures, such as testing and mask-wearing, can be implemented. Apparently other universities in this state believe that these less restrictive measures are sufficient, and Covid-19 is the same whether it's in Kalamazoo or Ann Arbor. Indeed, Plaintiffs' sport, soccer, is played outdoors, which is widely known as one of, if not the hardest, places to transfer Covid-19.

For example, the entire NCAA men's basketball tournament was safely played indoors utilizing testing, quarantining, and masking procedures. There was no requirement that every player had to be vaccinated in order to participate. Yet, the tournament was handled in a safe manner. In this case, soccer is played outdoors where Covid-19 is even harder to transmit to other people. If it's safe for men to play basketball indoors without a vaccine mandate, then it is certainly safe for women to play soccer outdoors without a vaccine mandate.

In the final analysis, the irreparable harm to Plaintiffs rights outweighs the harm to Defendants' objectives.

## D. The Impact of the TRO/Preliminary Injunction on the Public Interest.

As stated by the Sixth Circuit, "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc.*, 23 F.3d at 1079; *see also Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995) (stating that "the public as a whole has a significant interest in ensuring equal protection of the laws . . .").

In addition to all the reasons already outlined above, it is in the public interest to issue the TRO/preliminary injunction to preserve constitutional rights.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion.

Respectfully submitted,

GREAT LAKES JUSTICE CENTER

/s/ *David A. Kallman*
David A. Kallman
Stephen P. Kallman
Erin E. Mersino
Jack C. Jordan
*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

I hereby certify that this brief contains 4,516 words, exclusive of the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits, and is thus within the word limit allowed under Local Civil Rule 7.2(b)(i). The word count was generated by the word processing software used to create this brief: Word for Microsoft Office 365.

**GREAT LAKES JUSTICE CENTER:**

/s/ *David A. Kallman*
David A. Kallman
