## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **EMILY DAHL, HANNAH REDOUTE, BAILEY KORHORN, MORGAN OTTESON, JAKE MOERTL, KIA BROOKS, AUBREE ENSIGN, REILLY JACOBSON, TAYLOR WILLIAMS, KAELYN PARKER, ANNALISE JAMES, MAXWELL HUNTLEY, SYDNEY SCHAFER, DANIELLE NATTE, NICOLE MOREHOUSE, and KATELYN SPOONER,** | **FIRST AMENDED VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF** |
| **Plaintiffs,** | **CASE NO.:1:21-cv-757**<br><br>**HON.: PAUL L. MALONEY** |
| **-vs-** | |
| **THE BOARD OF TRUSTEES OF WESTERN MICHIGAN UNIVERSITY; EDWARD MONTGOMERY, President of WMU; KATHY BEAUREGARD, WMU Athletic Director; and TAMMY L. MILLER, Associate Director** of Institutional Equity, | |
| **Defendants.** | |

| | |
|---|---|
| David A. Kallman          (P34200)<br>Stephen P. Kallman      (P75622)<br>Erin E. Mersino          (P70886)<br>Jack C. Jordan            (P46551)<br>**GREAT LAKES JUSTICE CENTER**<br>**Attorneys for Plaintiffs**<br>**5600 W. Mount Hope Hwy.**<br>**Lansing, MI  48917**<br>**(517) 322-3207** | Michael S. Bogren    (P34835)<br>**PLUNKETT COONEY**<br>**Attorney for Defendants**<br>**333 Bridge St. NW, Ste. 530**<br>**Bridgewater Place**<br>**Grand Rapids, MI 49504**<br>**(269) 901-9040** |

NOW COME the above-named Plaintiffs, by and through their undersigned counsel, and together bring this First Amended Verified Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

1

## **INTRODUCTION**

1.      This case seeks to protect and vindicate statutory, and fundamental constitutional rights. Plaintiffs bring a civil rights action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for other statutory and constitutional violations, challenging Defendants' acts, policies, practices, customs, and procedures, which deprived Plaintiffs of their First Amendment rights, their right to Due Process, and their Fourteenth Amendment liberty right to privacy, self-autonomy and personal identity, including the right to reject government mandated medical treatment.

2.      Defendants unjustly discriminate against Plaintiffs because of their sincerely held religious beliefs and their viewpoints by mandating that they must take the Covid-19 vaccine in order to participate on Defendants' college soccer team.

3.      Specifically, Defendants' vaccine mandate seeks to override Plaintiffs' sincerely held religious beliefs and viewpoint and discriminates against them on the basis of their religion.

4.      As set forth in this Complaint, the policies, practices, customs, and procedures of Defendants (hereinafter "WMU") were the cause of, and the moving force behind, the statutory, and constitutional violations in this case.

5.      Plaintiffs seek:

a.  injunctive relief enjoining the unconstitutional application of WMU's policies, practices, customs and procedures as set forth in this Complaint, all with a temporary restraining order, preliminary injunction, and permanent injunction;

b.  a declaration that Defendants violated Plaintiffs clearly established statutory and constitutional rights;

c.  a declaration that the training, supervision, policies, practices, customs, and procedures

2

of Defendants as set forth in this Complaint violate the United States Constitution and the Michigan Constitution;

d. a finding that Defendants actions violate state and federal anti-discrimination laws;

e. an award of nominal damages; and

f. an award of their reasonable costs of litigation, including attorneys' fees and costs, pursuant to 42 U.S.C. §1988 and other applicable law.

## JURISDICTION AND VENUE

6.     This action arises under the Constitution and laws of the United States and of the State of Michigan. Jurisdiction is conferred on this Honorable Court pursuant to 28 U.S.C. § 1331 and 1343, as well as under 42 U.S.C. § 2000a, *et seq.,* and 42 U.S.C. § 1983, and other Federal and State laws and regulations, to redress violations of federal and state statutes.

7.     This Honorable Court has jurisdiction pursuant to Article III of the United States Constitution, 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). Declaratory relief is authorized pursuant to 28 U.S.C. § 2201 and 2202.

8.     This Honorable Court has supplemental jurisdiction regarding the remaining state claims pursuant to 28 U.S.C. § 1367.

9.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. § 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this court. Plaintiffs' claims for damages are authorized under 42 U.S.C. § 1983, 42 U.S.C. § 2000d-7, and by the general legal and equitable powers of this Honorable Court.

10.     Venue is proper under 28 U.S.C. § 1391(b) because Defendants are located in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## **PLAINTIFFS**

11.     Plaintiff Emily Dahl is a student at Western Michigan University and is studying Healthcare Services & Science.  She is a Defender on the WMU women's soccer team and is on athletic scholarship. Emily regularly makes the Dean's List and is an Academic All-MAC award recipient. Emily was named Second Team All-MAC in 2020.

12.     Plaintiff Hannah Redoute is a student at Western Michigan University and is studying Accounting.  She is a Forward on the WMU women's soccer team and is on athletic scholarship. Hannah regularly makes the Dean's List and is an Academic All-MAC award recipient.

13.     Plaintiff Bailey Korhorn is a student at Western Michigan University and is studying Accounting.  She is a Center Midfielder and Team Captain on the WMU women's soccer team and   is on athletic scholarship. Bailey regularly makes the Dean's List and is an Academic All-MAC award recipient. Bailey was awarded First Team All-MAC in 2020 which was played in the 2021 spring season and was awarded Second Team All-MAC in 2019. Bailey was all named to the All-Region team in 2020.

14.     Plaintiff Morgan Otteson is a student at Western Michigan University and is studying Accounting.  She is a Forward and Team Captain on the WMU women's soccer team and is on athletic scholarship.  Morgan was First Team All-MAC in 2019. She also regularly makes the Dean's List, is an Academic All-MAC award recipient, and a MAC Distinguished Scholar Athlete. Morgan was named to the All-Region Team in 2019.

15.     Plaintiff Taylor Williams is a student at Western Michigan University and is studying Criminal Justice.  She is on the WMU women's basketball team and is on athletic scholarship.

16.     Plaintiff Jake Moertl is a student at Western Michigan University and is studying Criminal Justice.  He is on the WMU men's football team and is on athletic scholarship.

17.     Plaintiff Maxwell Huntley is a student at Western Michigan University and is studying Finance.  He is on the WMU men's baseball team and is on athletic scholarship.

18.     Plaintiff Kaelyn Parker is a student at Western Michigan University and is studying Music Theatre Performance.  She is on the WMU dance team.

19.     Plaintiff Annalise James is a student at Western Michigan University and is studying Exercise Science.  She is on the WMU cross country and track team and is on athletic scholarship.

20.     Plaintiff Reilly Jacobson is a student at Western Michigan University and is studying Counseling. She is on the WMU women's basketball team and is on athletic scholarship.

21.     Plaintiff Kia Brooks is a student at Western Michigan University and is studying Sports Management.  She is on the WMU women's basketball team and is on athletic scholarship.

22.     Plaintiff Aubree Ensign is a student at Western Michigan University and is studying Dance and Occupational Therapy.  She is on the WMU dance team.

23.     Plaintiff Sydney Schafer is a student at Western Michigan University and is studying Sales and Marketing.  She is on the WMU women's basketball team and is on athletic scholarship.

24.     Plaintiff Danielle Natte is a student at Western Michigan University and is studying Dance.  She is on the WMU dance team.

25.     Plaintiff Nicole Morehouse is a freshman student at Western Michigan University. She is on the WMU Cross Country team.

26.     Plaintiff Katelyn Spooner is a student at Western Michigan University and is

studying Accounting.  She is on the WMU Cross Country and Track and Field teams. She is also on scholarship.

27.     Plaintiffs are Christians who adhere to the teachings of the Bible and are morally bound to follow the universal, consistent moral teaching of the Christian faith. All Plaintiffs find their dignity, personal identity, and autonomy in the exercise of their sincerely held Christian religious beliefs.

28.     Plaintiffs do not oppose or demean any person for the personal medical decisions they make. Plaintiffs oppose the medical mandates now being forced upon them by Defendants, and the resulting violation of Plaintiffs' statutory and constitutional rights.

29.     Plaintiffs are devoted Christian people who sincerely believe the Bible's teachings and sincerely hold Christian beliefs that preclude them for taking the COVID -19 shot.

30.     Defendants' vaccine mandate does not apply to all students at WMU. Plaintiffs are willing to take other preventative measures, like weekly testing, masking, etc.

31.     Plaintiffs sincerely believe the Bible teaches that human beings have a duty to God to live their lives according to His Word.

32.     As part of their personal identity and autonomy, Plaintiffs sincerely believe that they have a duty and obligation to live out their faith in all areas of life, including personal medical decisions.

33.     Defendants' policies punish them for exercising their constitutionally and statutorily protected rights to make their own medical decisions consistent with their faith and in consultation with their doctors and other medical professionals.

## **DEFENDANTS**

34.     The Western Michigan University (WMU) Board of Trustees is a public state

governmental entity established and organized under, and pursuant to, the laws of the State of Michigan with the authority to sue and be sued in its own name. Defendant operates within this District. At all times relevant, Defendant has acted, and continues to act, under color of state law.

35.     Defendant Edward Montgomery is an individual and President for WMU who is directly implementing and enforcing the medical treatment policies at issue in this case. He requires Plaintiffs to comply with the contested policies set forth in this Complaint or lose their right to continue as members of the soccer team. He is being sued in his official capacity.

36.     WMU and its officials are responsible for creating, adopting, approving, ratifying, and enforcing the policies, practices, customs, and procedures of the university, including the challenged policies, practices, customs, and procedures set forth in this Complaint.

37.     Defendant Kathy Beauregard is an individual and Athletic Director for WMU who is directly implementing and enforcing the medical treatment policies at issue in this case. She requires Plaintiffs to comply with the contested policies set forth in this Complaint or lose their right to continue as members of the soccer team. She is being sued in her official capacity.

38.     Defendant Beauregard violated Plaintiffs' clearly established constitutional and statutory rights and acted outside the scope of her authority in approving and enforcing these policies. She is being sued in her official capacity.

39.     Defendant Tammy L. Miller is an individual and Associate Director of Institutional Equity at WMU and, as the Institutional Equity representative, acted to ban Plaintiffs from engaging in practices and competition in any intercollegiate athletic program at WMU beginning August 31, 2021 (Exhibit A). She is being sued in her official capacity.

40.     Defendant Miller violated Plaintiffs' clearly established constitutional and statutory

7

rights and acted outside the scope of her authority in approving and enforcing these policies.

## STATEMENT OF FACTS

41.     Defendants adopted a policy, practice, custom, and procedure on August 12, 2021, requiring and forcing Plaintiffs to take one of the Covid-19 vaccines by August 31, 2021, or be removed from their positions on the WMU women's soccer team and lose their right to participate in intercollegiate athletics.

42.     Plaintiffs were informed that they would get an email with procedures to be followed to request a religious exemption or medical exemption by the end of the following week.

43.     Defendants failed to send the promised procedures, so Plaintiffs (Emily Dahl, Hannah Redoute, Bailey Korhorn, and Morgan Otteson) took the initiative and on August 23, 2021, wrote to Defendants requesting that the procedures be disclosed.

44.     On August 24, 2021, Plaintiffs received a link to the procedures, including the right to request an exemption to the new policy on the basis of their religious beliefs.

45.     On August 24 and 25, 2021, Plaintiffs (Emily Dahl, Hannah Redoute, Bailey Korhorn, and Morgan Otteson) submitted their religious exemption requests to WMU. Each Plaintiff expressly articulated of their sincerely held religious Christian belief and articulated how taking the shot would substantially interfere with the exercise of this sincerely held religious belief. (see Statement of Morgan Otteson incorporated herein (Exhibit B); Statement of Emily Dahl incorporated herein (Exhibit C); Statement of Bailey Korhorn incorporated herein (Exhibit D); and Statement of Hannah Redoute incorporated herein (Exhibit E)).

46.     Plaintiffs stated their sincerely held Christian beliefs to Defendant and explained to Defendants why these sincerely held beliefs prevented them from taking the COVID-19 shot.

47.     On August 25, 2021, Defendants denied the requested religious exemptions for

three of the Plaintiffs (Emily Dahl, Hannah Redoute, Bailey Korhorn), and Defendants denied the final request (Morgan Otteseon) on August 30, 2021 (Exhibit F, G, H, and I).

48.     On August 26, 2021, Plaintiffs (Emily Dahl, Hannah Redoute, Bailey Korhorn) submitted a written request for an explanation for the denials and for information on their right to appeal the denial.

49.     On August 24, 2021, Jake Moertl submitted his religious accommodation request form to Defendants, and Defendants denied the requested accommodation on August 25, 2021 (Exhibit N).

50.     On August 26, 2021, Kia Brooks submitted her religious accommodation request form to Defendants, and Defendants denied the requested accommodation on August 31, 2021 (Exhibit O).

51.     On August 26, 2021, Aubree Ensign submitted her religious accommodation request form to Defendants, and Defendants denied the requested accommodation on August 30, 2021 (Exhibit P).

52.     On August 26, 2021, Reilly Jacobson submitted her religious accommodation request form to Defendants, and Defendants denied the requested accommodation on August 26, 2021 (Exhibit Q).

53.     On August 30, 2021, Taylor Williams submitted her religious accommodation request form to Defendants, and Defendants denied the requested accommodation on August 31, 2021 (Exhibit R).

54.     On August 31, 2021, Kaelyn Parker submitted her religious accommodation request form to Defendants, and Defendants denied the requested accommodation on August 31, 2021 (Exhibit S).

9

55.     On August 27, 2021, Annalise James submitted her religious accommodation request form to Defendants, and Defendants denied the requested accommodation on August 31, 2021 (Exhibit T).

56.     On August 30, 2021, Maxwell Huntley submitted his religious accommodation request form to Defendants, and Defendants denied the requested accommodation on August 31, 2021 (Exhibit U).

57.     On August 31, 2021, Sydney Schafer submitted her religious accommodation request form to Defendants, and Defendants denied the requested accommodation on August 31, 2021 (Exhibit V).

58.     On August 25, 2021, Danielle Natte submitted her religious accommodation request form to Defendants, and Defendants have yet to respond to her request (Exhibit W). Ms. Natte is treating Defendants' non-response as a denial since she is not allowed to practice or compete in meets.

59.     On August 31, 2021, Nicole Morehouse submitted her religious accommodation request form to Defendants, and WMU has not yet responded to her request (Exhibit Y). Ms. Morehouse is treating WMU's non-response as a denial since she is not allowed to practice or compete in meets.

60.     On August 29, 2021, Katelyn Spooner submitted her religious accommodation request form to Defendants, and Defendants denied the requested accommodation on August 30, 2021 (Exhibit X).

61.     Defendants made clear that the denial was not due to the insufficiency or insincerity of Plaintiffs' religious beliefs, referring Plaintiffs to the explanation section of the Defendants' response which stated: "The university has a compelling interest in taking action to avoid the

significant risk posed to the intercollegiate athletic programs of a Covid-19 outbreak due to unvaccinated participants and prohibiting unvaccinated members of the teams from engaging in practices and competition is the only effective manner of accomplishing this compelling interest."

62.     Defendants informed Plaintiffs that their decision was final, and no further appeal was available to them at WMU.

63.     All Plaintiffs will be irreparably harmed if injunctive relief is not granted because they will be removed from their respective sports teams and not allowed to participate in practices, games, or any other team activities.

64.     The National Collegiate Athletic Association (NCAA) does not require Defendants to implement this policy mandating a medical treatment in order to participate in intercollegiate athletics.

65.     Defendants do not require the general student body at WMU to be vaccinated in order to be physically present on campus, to attend school, to attend intercollegiate athletic events, to live in the dorms, or to otherwise participate in the educational programs at WMU.

66.     Defendants adopted, authorized, mandated, and approved these policies, which force Plaintiffs to take the vaccine shot in direct opposition to, and in violation of, Plaintiffs' personal identity, autonomy, and their sincerely held religious beliefs and convictions, and in violation of its own policies, federal and state statutes, and constitutional provisions.

67.     Defendants' policies, practices, customs, and procedures encourage school officials, and others, to silence and disparage opinions, ideas, and viewpoints that disagree with its medical determination made without consulting with Plaintiffs' doctors or accommodating Plaintiffs religious objections.

68.     Defendants' training, supervision, policies, practices, customs, and procedures chill

11

the expression of religious viewpoints, such as those held by Plaintiffs.

69.     Defendants' training, supervision, policies, practices, customs, and procedures demean and diminish the personal autonomy and dignity of Plaintiffs and all students who have a differing viewpoint and disagree with WMU's policies and actions.

## COUNT I - FREE EXERCISE OF RELIGION VIOLATION
## (First Amendment; 42 U.S.C. § 1983)

70.     Plaintiffs hereby incorporate by reference paragraphs 1 through 69 as if fully restated herein.

71.     By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiffs of their right to the free exercise of their sincerely held religious beliefs in violation of the First Amendment, as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

72.     Defendants violate Plaintiffs' First Amendment right to freely exercise their religious beliefs by mandating an invasive medical treatment that substantially interferes with Plaintiffs' religious free exercise rights.

73.     Defendants' policies violate the First Amendment by punishing students who exercise their religious beliefs in connection with their personal medical decisions.

74.     Plaintiffs' compliance with their sincerely held religious beliefs is a religious exercise.

75.     Defendants' policies and practices are not general laws as they specifically target Christians who share Plaintiffs' sincerely held religious views, but leave untouched students who ascribe to other or no faith traditions.

76.     By design, Defendants' exemption denials, policies and practices are imposed on

some religious students, but not on others, resulting in unjust discrimination amongst religious beliefs.

77.     Defendants' policies and practices further no compelling governmental interest as they directly violate Plaintiffs' First Amendment rights to free exercise of religion.

78.     Defendants' policies and practices fail to provide the least restrictive means of furthering any stated interest and are not narrowly tailored.

79.     Defendants' policies and practices create government-imposed, coercive pressure on Plaintiffs to change or violate their sincerely held religious beliefs.

80.     Defendants' policies, practices, customs, and procedures, punish and impose discipline on any student for exercising his or her right to free exercise of their religious beliefs. Defendants' actions injure Plaintiffs by chilling their religious activity and religious speech through threat of discipline and sanction by Defendants for failure to comply with its new policies.

81.     As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages for the loss of their constitutional rights.

### COUNT II - RIGHT TO PRIVACY, PERSONAL AUTONOMY, AND PERSONAL IDENTITY (Fourteenth Amendment; 42 U.S.C. § 1983)

82.     Plaintiffs hereby incorporate by reference paragraphs 1 through 81 as if fully restated herein.

83.     By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiffs of their fundamental constitutional right to privacy, personal autonomy, and personal identity, all in violation of the Fourteenth Amendment as applied to the states and their political subdivisions

under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

84.     Defendants further deprived Plaintiffs of their fundamental right to bodily integrity to make their own informed medical decisions with the assistance of their personal physicians.

85.     By favoring and enforcing policies that approve of and force medical treatment over Plaintiffs' right to privacy, personal identity and personal autonomy, Defendants violate Plaintiffs' Fourteenth Amendment rights.

86.     Defendants' conduct deprives Plaintiffs of their personal choices central to individual dignity and autonomy, including intimate choices defining personal identity and beliefs by stigmatizing and labeling their sincerely held religious beliefs as unworthy of protection by Defendants.

87.     Defendants' policies, practices, customs, and procedures, punish and impose discipline on Plaintiffs for alleged violations of Defendants' new policies, simply for exercising their religious and medical right to make their own medical decisions. Defendants' actions injure Plaintiffs by violating their constitutional rights through threat of discipline and sanction by Defendants for failure to comply with its new policies.

88.     As a direct and proximate result of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages for the loss of their constitutional rights.

## COUNT III – DISCRIMINATION IN PLACES OF PUBLIC ACCOMMODATION -
## (42 U.S.C. § 2000a, *et. seq.*)

89. Plaintiffs hereby incorporate and repeat herein paragraphs 1 through 88 above as if fully restated herein.

90. Defendants operate its school as a place of public accommodation as defined in 42 U.S.C. § 2000a, *et. seq.* (hereinafter referred to as the Act).

91. Defendants are involved in commerce as defined in the Act.

92. Defendants' implementation of its policies and procedures to mandate vaccinations for student athletes violate the Act and deprive Plaintiffs of their civil rights by subjecting Plaintiffs to conduct which has the purpose and effect of denying them the full benefit of the public accommodations and educational facilities at Defendants' school buildings and athletic venues and denies them full and equal access to the use and privileges of its public accommodations and educational facilities, on the basis of religion.

93. Defendants' policies have the purpose or effect of substantially interfering with Plaintiffs' right to access and utilize public accommodations and public services, including education and athletic participation, and creates an intimidating, hostile, or offensive public accommodation, public service, and educational environment for all the above-stated reasons.

94. As a direct and proximate result of Defendants' violations of the Act, Plaintiff students have suffered, are suffering, and will continue to suffer, damages, including the following:

A. Loss of use of school facilities.

B. Fear about using the school facilities.

C. Embarrassment and humiliation.

D. Severe emotional distress.

E.      All other damages that reasonably flow from Defendants' outrageous and illegal policies, practices, procedures, and actions.

## COUNT IV - MICHIGAN CONSTITUTIONAL VIOLATIONS

95.     Plaintiffs hereby incorporate by reference paragraphs 1 through 94 as if fully restated herein.

96.     By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiffs of their right to freely exercise their religion under Michigan's Constitution of 1963 a by violating Article I, §4 of the Michigan Constitution.

97.     Defendants' policies, for all the reasons as stated above, deny Plaintiffs the right and "liberty to worship God according to the dictates of his own conscience," and further "diminishes the civil and political rights, privileges and capacities" of Plaintiffs on account of their religious belief.

98.     Defendants' policies, practices, customs, and procedures, punish and impose discipline on any student for exercising his or her state constitutional rights as stated above. Defendants' actions injure Plaintiffs by chilling their constitutionally protected activity through threat of discipline and sanction by Defendants for failure to comply with its new policies.

99.     As a direct and proximate result of Defendants' violation of the state constitutional provisions specified above, Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages for the loss of their state constitutional rights.

## COUNT V - ELLIOTT-LARSEN CIVIL RIGHTS ACT VIOLATION -
## (MCL 37.2101, *et. seq.*; Mich. Const. 1963 Article I, §2; WMU Policy 11-04)

100.     Plaintiffs hereby incorporate and repeat herein paragraphs 1 through 99 above as if fully restated herein.

101.     Defendants operate its school as a place of public accommodation as defined in Michigan's Elliott-Larsen Civil Rights Act (hereinafter referred to as ELCRA), MCL 37.2301(a)(iii).

102.     Article I, §2 of the Michigan Constitution prohibits discrimination on the basis of religion. Violations of this constitutional provision are typically addressed through ELCRA. Defendants' policies, for all the reasons as stated above, deny Plaintiffs the enjoyment of their civil or political rights and discriminate against them in the exercise of those rights because of religion.

103.     Defendants are persons, as that term is defined in ELCRA, MCL 37.2103(g).

104.     Defendants' implementation of its policies and procedures to mandate vaccinations for student athletes violate ELCRA and deprive Plaintiffs of their civil rights by subjecting Plaintiffs to conduct which has the purpose and effect of denying them the full benefit of the public accommodations and educational facilities at Defendants' school buildings, and denies them full and equal access to the use and privileges of its public accommodations and educational facilities, on the basis of religion.

105.     Defendants' Non-Discrimination Policy 11-04 states: "Western Michigan University prohibits discrimination or harassment which violates the law or which constitutes inappropriate or unprofessional limitation of employment opportunity, University facility access, or participation in University activities, on the basis of race, color, religion, national origin, sex, sexual orientation, gender identity, age, protected disability, veteran status, height, weight, or marital status."

17

106.    For all the reasons stated herein, Defendants' vaccine mandate program violates Defendants' own policy by failing to provide a religious exemption to the vaccine requirement.

107.    The loss of participation in the athletic programs and activities at WMU discriminates "on the basis of religion," and violates Plaintiffs' rights under the Michigan Constitution, WMU policy, and under ELCRA.

108.    Defendants' policies have the purpose or effect of substantially interfering with the Plaintiffs' right to access and utilize public accommodations and public services, including education and athletic participation, and creates an intimidating, hostile, or offensive public accommodation, public service, and educational environment for all the above-stated reasons.

109.    As a direct and proximate result of Defendants' violations of the Michigan Constitution, WMU policy, and ELCRA, Plaintiff students will continue to suffer the following consequences:

A.  Loss of use of school facilities.

B.  Fear about using the school facilities.

C.  Embarrassment and humiliation.

D.  All other damages that reasonably flow from Defendants' illegal policies, practices, procedures, and actions.

18

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs ask this Honorable Court:

A.      to declare that Defendants' athletic vaccine mandate policy which provides no religious accommodations is invalid and unconstitutional for all the reasons as set forth in this Complaint;

B.      to declare that Defendants acted unconstitutionally, outside their authority, and in an *ultra vires* manner as set forth in this Complaint;

C.      to declare that Defendants violated Plaintiffs' fundamental constitutional rights as set forth in this Complaint;

D.      to declare that Defendants' violated Plaintiffs' statutory rights as set forth in this Complaint;

E.      to declare that Defendants' policy violates Michigan's Constitution, WMU Policy, and the Elliott-Larsen Civil Rights Act for all the reasons as stated above;

F.      to issue an *ex-parte* temporary restraining order, preliminary and permanent injunctions enjoining Defendants' new vaccine mandate policy for all the reasons as set forth in this Complaint (See attached Affidavits, Exhibits J, K, L, and M);

G.      to award Plaintiffs nominal damages;

H.      to award Plaintiffs their reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988, Title IX, and other applicable law; and

I.      grant such other and further relief as is just and appropriate.

Respectfully submitted,

**GREAT LAKES JUSTICE CENTER:**

/s/ David A. Kallman
By: David A. Kallman                    (P34200)
Attorney for Plaintiffs

**I HEREBY STATE AND AFFIRM THAT I HAVE HAD READ THE FOREGOING FIRST AMENDED VERIFIED COMPLAINT AND THAT IT IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.**

DATED: September 2, 2021.

_____
Emily Dahl

DATED: September 2, 2021.

_____
Hannah Redoute

DATED: September 2, 2021.

_____
Bailey Korhorn

DATED: September 2, 2021.

_____
Morgan Otteson

DATED: September 2, 2021.

_____
Jacob Moertl

DATED: September 2, 2021.

_____
Kia Brooks

DATED: September 2, 2021.

_____
Aubree Ensign

DATED: September 2, 2021.

_____
Reilly Jacobson

20

Respectfully submitted,

**GREAT LAKES JUSTICE CENTER:**


/s/ David A. Kallman
By: David A. Kallman                    (P34200)
Attorney for Plaintiffs

## I HEREBY STATE AND AFFIRM THAT I HAVE HAD READ THE FOREGOING FIRST AMENDED VERIFIED COMPLAINT AND THAT IT IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.

DATED: September 2, 2021.

_____
Emily Dahl

DATED: September 2, 2021.

_____
Hannah Redoute

DATED: September 2, 2021.

_____
Bailey Korhorn

DATED: September 2, 2021.

_____
Morgan Otteson

DATED: September 2, 2021.

_____
Jacob Moertl

DATED: September 2, 2021.

_____
Kia Brooks

DATED: September 2, 2021.

_____
Aubree Ensign

DATED: September 2, 2021.

_____
Reilly Jacobson

Respectfully submitted,

**GREAT LAKES JUSTICE CENTER:**

/s/ David A. Kallman
By: David A. Kallman    (P34200)
Attorney for Plaintiffs

**I HEREBY STATE AND AFFIRM THAT I HAVE HAD READ THE FOREGOING FIRST AMENDED VERIFIED COMPLAINT AND THAT IT IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.**

DATED: September 2, 2021.

_____
Emily Dahl

DATED: September 2, 2021.

_____
Hannah Redoute

DATED: September 2, 2021.

_____
Bailey Korhorn

DATED: September 2, 2021.

_____
Morgan Otteson

DATED: September 2, 2021.

_____
Jacob Moertl

DATED: September 2, 2021.

_____
Kia Brooks

DATED: September 2, 2021.

_____
Aubree Ensign

DATED: September 2, 2021.

_____
Reilly Jacobson

20

Respectfully submitted,

**GREAT LAKES JUSTICE CENTER:**


/s/ David A. Kallman
By:  David A. Kallman          (P34200)
Attorney for Plaintiffs

**I HEREBY STATE AND AFFIRM THAT I HAVE HAD READ THE FOREGOING FIRST AMENDED VERIFIED COMPLAINT AND THAT IT IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.**

DATED: September 2, 2021.

_____
Emily Dahl

DATED: September 2, 2021.

_____
Hannah Redoute

DATED: September 2, 2021.

_____
Bailey Korhorn

DATED: September 2, 2021.

_____
Morgan Otteson

DATED: September 2, 2021.

_____
Jacob Moertl

DATED: September 2, 2021.

_____
Kia Brooks

DATED: September 2, 2021.

_____
Aubree Ensign

DATED: September 2, 2021.

_____
Reilly Jacobson

DATED: September 2, 2021.

*T. Williams*

Taylor Williams

DATED: September 2, 2021.

_____

Kaelyn Parker

DATED: September 2, 2021.

_____

Annalise James

DATED: September 2, 2021.

_____

Maxwell Huntley

DATED: September 2, 2021.

*Sydney Schafer*

Sydney Schafer

DATED: September 2, 2021.

_____

Danielle Natte

DATED: September 2, 2021.

_____

Katelyn Spooner

DATED: September 2, 2021.

_____
Taylor Williams

DATED: September 2, 2021.

_____
Kaelyn Parker

DATED: September 2, 2021.

_____
Annalise James

DATED: September 2, 2021.

_____
Maxwell Huntley

DATED: September 2, 2021.

_____
Sydney Schafer

DATED: September 2, 2021.

_____
Danielle Natte

DATED: September 2, 2021.

_____
Katelyn Spooner

21

DATED:  September 2, 2021.  _____

Taylor Williams

DATED:  September 2, 2021.  _____

Kaelyn Parker

DATED:  September 2, 2021.  _____

Annalise James

DATED:  September 2, 2021.  _____

Maxwell Huntley

DATED:  September 2, 2021.  _____

Sydney Schafer

DATED:  September 2, 2021.  _____

Danielle Natte

DATED:  September 2, 2021.  _____

Katelyn Spooner

21

DocuSign Envelope ID: 3829B3AC-6032-46CA-9FC8-8910 1D35F4DD

DATED: September 2, 2021.

_____
Taylor Williams


DATED: September 2, 2021.

_____
Kaelyn Parker


DATED: September 2, 2021.

_____
Annalise James


DATED: September 2, 2021.

*Maxwell Huntley*
_____
Maxwell Huntley


DATED: September 2, 2021.

_____
Sydney Schafer


DATED: September 2, 2021.

_____
Danielle Natte


DATED: September 2, 2021.

_____
Katelyn Spooner

DATED: September 2, 2021.

_____
Taylor Williams

DATED: September 2, 2021.

_____
Kaelyn Parker

DATED: September 2, 2021.

_____
Annalise James

DATED: September 2, 2021.

_____
Maxwell Huntley

DATED: September 2, 2021.

_____
Sydney Schafer

DATED: September 2, 2021.

_____
Danielle Natte

DATED: September 2, 2021.

_____
Katelyn Spooner

21

DATED: September 2, 2021.

_____

Taylor Williams

DATED: September 2, 2021.

_____

Kaelyn Parker

DATED: September 2, 2021.

_____

Annalise James

DATED: September 2, 2021.

_____

Maxwell Huntley

DATED: September 2, 2021.

_____

Sydney Schafer

DATED: September 2, 2021.

_____

Danielle Natte

DATED: September 2, 2021.

_____

Katelyn Spooner

21

DATED: September 2, 2021.

*Nicole Morehouse*

Nicole Morehouse