IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **EMILY DAHL, et al.,** | **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF, CERT. OF COMPLIANCE, AND CERT. OF SERVICE** |
| Plaintiffs, | |
| -vs- | |
| THE BOARD OF TRUSTEES OF WESTERN MICHIGAN UNIVERSITY; et al., | CASE NO.:1:21-cv-757 |
| | HON.: PAUL L. MALONEY |
| Defendants. | |

| | |
|---|---|
| David A. Kallman         (P34200) | Michael S. Bogren    (P34835) |
| Stephen P. Kallman      (P75622) | PLUNKETT COONEY |
| Erin E. Mersino            (P70886) | Attorney for Defendants |
| Jack C. Jordan             (P46551) | 333 Bridge St. NW, Ste. 530 |
| GREAT LAKES JUSTICE CENTER | Bridgewater Place |
| Attorneys for Plaintiffs | Grand Rapids, MI 49504 |
| 5600 W. Mount Hope Hwy. | (269) 901-9040 |
| Lansing, MI  48917 | |
| (517) 322-3207 | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**

**INTRODUCTION**

This Honorable Court issued its Amended Temporary Restraining Order (TRO) on August 31, 2021 (ECF No. 8). The Court issued the TRO based upon Plaintiffs' First Amendment Free Exercise of Religion claim. Because the Court issued the TRO based upon that claim, Plaintiffs address the arguments surrounding that claim, and why it justifies converting the TRO into a Preliminary Injunction.

- 1 -

**ARGUMENT**

**I.  DEFENDANTS' LACK OF RESPONSE.**

Defendants spend a large portion of their brief arguing points not in dispute and legal theories that not argued, instead of responding to the actual issues at hand. For example, Plaintiffs are not arguing that they have a fundamental constitutional right to be a WMU athlete, and Plaintiffs are not arguing against the existence of COVID-19. Instead, Plaintiffs are arguing that Defendants violated their Free Exercise of Religion constitutional right, and Defendants failed to provide any evidence or argument as to why their denial of Plaintiffs' requested religious accommodations can survive a strict scrutiny analysis.

It is also important to note what Defendants did not dispute in their response. They did not dispute that they have no vaccination requirement for all students at Western Michigan University (WMU). Defendants did not dispute that unvaccinated students are participating on campus in virtually limitless activities that could possibly spread COVID-19 (not only to other students and faculty, but also to the student athletes at issue here), such as living in dorms, eating in cafeterias, engaging in intramural or other sports activities, or attending large sporting events on campus. They did not dispute that other colleges in the Midwest provide for religious accommodations to their student athletes that allow those students to participate in intercollegiate athletics using less restrictive safe alternatives to mandated vaccination.

Perhaps conceding it cannot do so, Defendants also did not respond to the direction in this Court's order that "WMU must establish the compelling reason for its actions" and "must explain why the decision to remove the unvaccinated players from intercollegiate competition is narrowly tailored" (ECF No. 8, PageID.130). Instead, Defendants contend that this Honorable Court applied the wrong legal standard when analyzing Plaintiffs' claims. The record shows Defendants justified

their substantial interference with Plaintiffs' free exercise of religion by individually denying every request by Plaintiffs on the grounds that WMU had a compelling interest for doing so, and that WMU used the least restrictive means to accomplish its compelling interest (See, e.g. Complaint Exhibit F). Nevertheless, Defendants now argue this standard does not apply, contending they must only justify their interference of Plaintiffs' religious liberty by satisfying a rational basis test. Defendants' argument lacks merit.

II. **DEFENDANTS' MANDATORY VACCINATION POLICY IS NOT GENERALLY APPLICABLE AND IS SUBJECT TO STRICT SCRUTINY.**

Defendants now argue their policy is neutral and generally applicable, and therefore, that it is not subject to a strict scrutiny analysis. This argument fails for a number of reasons.

As this Honorable Court already correctly stated, "[a] law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing a 'mechanism for individualized exemptions.'" *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1877 (2021) (citation omitted). In *Fulton*, Supreme Court further held:

> The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given, because it "invite[s]" the government to decide which reasons for not complying with the policy are worthy of solicitude, *Smith*, 494 U.S. at 884, 110 S.Ct. 1595—here, at the Commissioner's "sole discretion."

*Id*. at 1879.

Despite Defendants' claim that no such mechanism for individualized exemptions exist in this case, their own policy and affidavits show otherwise. First, Defendants' provide an affidavit expressly showing that their own policy states:

> Medical or religious exemptions and accommodations will be considered **on an individual basis**.

(ECF No. 18-2, PageID.333 (emphasis added)). Defendants' policy explicitly provides that the accommodations in this case will be provided on an "individual" basis. Defendant Tammy Miller

- 3 -

thereafter reviewed each request for religious accommodation and did make individual determinations as to each Plaintiff's request (ECF No. 18-3, PageID.339). Ms. Miller stated that she did not grant any of the Plaintiffs' requests (ECF No. 18-3, PageID.339). As *Fulton* clearly holds, it is the creation of the mechanism for granting individualized exceptions and accommodations granted at the sole discretion of Defendants that renders a policy to not be generally applicable, "regardless whether any exceptions have been given[.]" *Id*. at 1879.

Moreover, Defendants claim in their attached affidavit:

> Western Michigan University and its Division of Intercollegiate Athletics expressly reserve the exclusive right to establish and determine the standards of conduct, behavior, and performance of student-athletes participating in the intercollegiate athletic program ("Program") and to require compliance with such standards as a condition of continued participation in the Program.

(ECF No. 18-2, PageID.336). This language gives Defendants the sole discretion to not only establish policies, ad hoc, but to also enforce those policies against student-athletes. This situation differs from many of the cases regarding a "mechanism for individualized exceptions" because typically those laws or policies are enacted by a separate legislative branch or city council and then enforced by the executive branch or city mayor.

However, in this case, Defendants reserved for themselves the exclusive right (or sole discretion) to not only enact the policies, but also the authority to enforce them. Thus, such language "invite[s] the government to decide which reasons for not complying with the policy are worthy of solicitude" because Defendants have the authority to decide, at any time, who is affected by their policy, who has to comply with their policy, who is exempted from their policy, and the consequences for obtaining an exemption to their policy. Therefore, Defendants' policy combined with their sole discretion to exempt anyone at any time for any reason clearly indicates that the rule of general applicability does not apply in this case.

Defendants argue in generalities that COVID-19 is dangerous, and the mere existence of COVID-19 justifies their policy. For example, Defendants argue that because there have been 375 confirmed deaths and 43 probable deaths in Kalamazoo County, this justifies their denial of Plaintiffs requested religious accommodations. What Defendants failed to state was that there have been zero confirmed deaths reported in Kalamazoo County for anyone under age 40.[1]



---

[1] State of Michigan, Deaths by Demographic Characteristics. https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html. Data retrieved on September 7, 2021. The State of Michigan indicates that data is suppressed when the number of deaths for a demographic category is five or below to protect the confidentiality of individuals.

Further, there have been zero probable deaths reported for anyone under age 70.[2]



Since this case is entirely dealing with intercollegiate student-athletes who are between the ages of 17 and 23, Defendants' alleged justification is completely insufficient.

Defendants make numerous conclusory statements about how their policy is necessary but then provide zero medical evidence, studies, or anything else to support their position. Defendants cite to no evidence or study which indicates that providing religious accommodations, such as testing, quarantining, or masking (in lieu of mandatory vaccination), undermines their goal to such a degree as to overcome Plaintiffs' fundamental rights. This would perhaps explain why no other university has implemented a policy similar to Defendants.

Defendants cite *Bowen v. Roy*, 476 U.S. 693, 699 (1986) to support their position without recognizing that the Supreme Court in *Lyng v. Northwest Indian Cemetery Protective Association*,

---

[2] State of Michigan, Deaths by Demographic Characteristics. https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html. Data retrieved on September 7, 2021. The State of Michigan indicates that data is suppressed when the number of deaths for a demographic category is five or below to protect the confidentiality of individuals.

485 U.S. 439, 108 S.Ct. 1319 (1988) expanded upon *Roy*. While the *Lyng* Court ultimately denied that particular Plaintiff's religious claims in that case, the Court outlined the two questions to analyze when determining whether a governmental policy violates the First Amendment. The first was whether "the affected individuals [would] be coerced by the Government's action into violating their religious beliefs," and whether the "governmental action [would] penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Id*. at 449.  The *Lyng* Court concluded:

> **It is true that this Court has repeatedly held that indirect coercion or penalties on the free exercise of religion, not just outright prohibitions, are subject to scrutiny under the First Amendment.** Thus, for example, ineligibility for unemployment benefits, based solely on a refusal to violate the Sabbath, has been analogized to a fine imposed on Sabbath worship. This does not and cannot imply that incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs, require government to bring forward a compelling justification for its otherwise lawful actions.

*Id*. at 450-451 (internal citations omitted) (emphasis added).

In this case, Defendants are coercing Plaintiffs "into violating their religious beliefs" and are penalizing Plaintiffs by denying them their "rights, benefits, and privileges." While Plaintiffs certainly do not have a fundamental constitutional right to be on an intercollegiate sports team, they do have the right to the free exercise of religion under the First Amendment, and they do have a benefit and privilege of being on WMU's athletic teams. It goes without saying that being on an intercollegiate athletic team may end up being one of the greatest achievements in a person's life because of the hard work and dedication it requires to achieve it.

It is extremely coercive for Defendants to threaten everything Plaintiffs have achieved and threaten to permanently remove them from all participation in WMU athletics unless they violate their sincerely held religious beliefs and agree to be vaccinated. *Lyng* clearly indicates that the government cannot require or coerce a person to violate their sincerely held religious beliefs as a

prerequisite for participation in intercollegiate sports. Defendants are penalizing Plaintiffs' religious beliefs by denying them the benefit and privilege of participating in intercollegiate sports. Pursuant to Defendants' policy, no person who has a religious objection to vaccines will be permitted to participate in WMU athletics. Defendants have now completely excluded that entire class of people based upon their sincerely held religious beliefs. The constitution forbids such blanket exclusions from participation in government-run programs. This is especially so when there are less restrictive and more narrowly tailored means available.

In summary, Defendants' policy is not generally applicable, coerces Plaintiffs to violate their sincerely held religious beliefs, and unlawfully denies them their benefits and privileges as a result. Therefore, Defendants' policy must survive strict scrutiny. It cannot.

### III. DEFENDANTS DO NOT HAVE A COMPELLING INTEREST AND DID NOT UTILIZE NARROWLY TAILORED MEANS.

The Supreme Court in *Fulton* held:

> Rather than rely on "broadly formulated interests," courts must "scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants." O'Centro, 546 U.S. at 431, 126 S.Ct. 1211. **The question, then, is not whether the City has a compelling interest in enforcing its non-discrimination policies generally, but whether it has such an interest in denying an exception to CSS.** Once properly narrowed, the City's asserted interests are insufficient. Maximizing the number of foster families and minimizing liability are important goals, but the City fails to show that granting CSS an exception will put those goals at risk.

*Fulton, supra,* at 1881-1882 (emphasis added).

Thus, in this case, it must be analyzed whether Defendants had a compelling interest in denying Plaintiffs' requested religious accommodations. Defendants now claim that religious accommodations were, in fact, granted for Plaintiffs. However, Defendants proposed "accommodations" are illusory and provide no actual accommodation for Plaintiffs' religious beliefs. Defendants state that a student who requests a religious accommodation "is to no longer

participate as a student-athlete, will maintain any athletic scholarship they have and will continue to be listed as a player on the team website" (ECF No. 18-2, PageID.336).

To begin, complete removal from the WMU athletic team is no more an accommodation than an employer granting a religious accommodation by firing that employee with severance pay. Defendants' claim they are providing an accommodation to these Plaintiff student-athletes by telling them that they can no longer "participate as a student athlete." It strains the imagination to understand how barring a student-athlete from participating as a student-athlete amounts to an accommodation.

Next, Defendants claim that Plaintiffs can maintain their scholarships. When a person promises something they are already obligated to do, such a promise is illusory. Here, Defendants are already obligated and have entered into agreements with many of the Plaintiffs to provide scholarships. Defendants' promise is essentially that they are agreeing to fulfill what they've already agreed to do and will not breach their agreement with Plaintiffs. Such an "accommodation" is illusory.

Finally, Defendants' offer to keep Plaintiffs' names on the team website is no meaningful accommodation. For example, an accommodation would be completely illusory if a club or fraternity told one of its members that they were permanently barred from participating in any club or fraternity activities, yet they would still be listed online as a member of that club or fraternity. Imagine in *Fulton* if the City of Philadelphia told the Plaintiffs in that case that they were providing an accommodation by prohibiting Plaintiffs from engaging in any foster care activities, but instead would still be listed on the City's website as an approved foster care agency. Obviously such an "accommodation" is not any accommodation in any reasonable sense of the word. The bottom line

is that Defendants' proposed "accommodations" do nothing to alleviate or fulfill their duties under the First Amendment and are illusory at best.

Defendants provided no exception, accommodation, or opportunity for Plaintiffs to comply with their sincerely held religious beliefs while also remaining on WMU's athletic teams. In the end, this is all Plaintiffs have requested from Defendants. Plaintiffs simply want to continue their dream of playing college sports at WMU while also complying with their sincerely held religious beliefs. Such a requested accommodation is required by the First Amendment and WMU fails provide any such analysis in their response to the contrary.

Moreover, the Sixth Circuit has held:

> Under strict scrutiny review, the government bears the burden of showing that its regulation is "necessary to serve a compelling state interest" and that it is "narrowly drawn to achieve that end."

*Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 172 F.3d 397, 409 (6th Cir. 1999).

The burden to demonstrate that there is a compelling governmental interest is on Defendants. Despite having this burden, and the Court in its prior order indicating the same, Defendants have presented no argument as to why their policy and conduct in this case is supported by a compelling interest or is narrowly tailored. Instead, Defendants state in conclusory terms that providing religious accommodations "undermines the efficacy and intent of the requirement" (ECF No. 18-2, PageID.333). However, Defendants provide no explanation for why this interest is compelling, narrowly tailored, or rises to the level of overcoming a constitutional right.

Defendants claim that they are implementing this policy because they are worried about COVID-19 outbreaks and they do not want unvaccinated student-athletes infecting vaccinated student-athletes. Defendants presented no evidence as to why or how the vaccinated student-athletes are placed at risk by having unvaccinated student-athletes on the team. Further, Defendants

- 10 -

do not deny that there is no mandatory vaccine requirement for all students at WMU. It does not make any sense for Defendants to be so concerned about vaccinated student-athletes coming into contact with anyone who is unvaccinated when those same student-athletes will inevitably come into daily contact with unvaccinated students at class, at dorms, at the cafeteria, at school events, at restrooms, and at virtually any other place on campus where students have interaction with each other.

Defendants also do not allege that other colleges and universities are permanently excluding any student-athlete who is not vaccinated. It is also inevitable that WMU student-athletes will have contact with other unvaccinated student-athletes when they play other schools in intercollegiate games. For example, WMU just played the University of Michigan (U of M) on September 4, 2021, in Ann Arbor. WMU's student-athletes undoubtably had innumerable contacts with unvaccinated U of M student-athletes, staff, employees, and guests. If Defendants' primary goal and concern was to reduce any possibility of causing a COVID-19 outbreak, their conduct certainly does not match their rhetoric.

Defendants also provide no explanation for how their policy is narrowly tailored. Defendants cite to the recent decision in *Klaassen v. Trustees of Indiana Univ.*, No. 1:21-CV-238 DRL, 2021 WL 3073926 (N.D. Ind. July 18, 2021)). Defendants failed to note a very important distinction in that case because the Court outlined Indiana's religious accommodation policy:

> For those who receive exemption from vaccination, the policy imposes additional safety requirements. These requirements apply to six of the eight students here who have received exemptions and potentially a seventh who qualifies for an exemption. Such students must participate in more frequent mitigation testing, quarantine if exposed to someone who has tested positive for COVID-19, wear a mask in public spaces, and return to their permanent address or quarantine if there is a serious outbreak of COVID-19

*Id.* at 13. Thus, Indiana's policy provided a religious exemption which permitted students to still participate in all school activities but had to comply with additional safety requirements. WMU

does not. This is all Plaintiffs are requesting in this case, a proper religious accommodation. Plaintiffs are willing to comply with additional safety requirements in order to continue to participate in WMU activities. Defendants have failed to provide any explanation for why such a less restrictive and narrowly tailored policy, as used by many other surrounding colleges and universities, could not also achieve their goal of reducing the spread of COVID-19.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' request to convert the currently issued TRO into a Preliminary Injunction.

Respectfully submitted,

GREAT LAKES JUSTICE CENTER

/s/ *David A. Kallman*
David A. Kallman
Stephen P. Kallman
Erin E. Mersino
Jack C. Jordan
*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

I hereby certify that this brief contains 3,221 words, exclusive of the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits, and is thus within the word limit allowed under Local Civil Rule 7.2(b)(i).  The word count was generated by the word processing software used to create this brief: Word for Microsoft Office 365.

GREAT LAKES JUSTICE CENTER:

/s/ *David A. Kallman*
David A. Kallman

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2021, a copy of the foregoing Reply Brief in Support of Plaintiffs' Motion for Injunctive Relief, was filed electronically with the Court. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

GREAT LAKES JUSTICE CENTER

/s/ *David A. Kallman*
David A. Kallman