UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMILY DAHL, *et al.*,  )
      Plaintiffs,  )
          ) No. 1:21-cv-757
-v-          )
          ) Honorable Paul L. Maloney
THE BOARD OF TRUSTEES OF WESTERN  )
MICHIGAN UNIVERSITY, *et al.*,  )
      Defendants.  )
          )

## OPINION AND ORDER GRANTING A PRELIMINARY INJUNCTION

Western Michigan University requires its student athletes to receive a COVID-19 vaccination. The University informed its student athletes that it would consider medical and religious exemptions on an individual basis. Plaintiffs, all student athletes, each submitted a request for a religious exemption from the vaccine requirement. The University denied each request, asserting that it had a compelling interest. Plaintiffs sued, alleging a violation of the rights under the Free Exercise Clause. Reviewing the claim under strict scrutiny, the Court concludes Defendants have not established that the vaccine requirement is narrowly tailored to meet its compelling interest. The Court will grant Plaintiffs a preliminary injunction enjoining Defendants from enforcing the vaccine mandate against Plaintiffs during this litigation.

I.

Plaintiffs learned about a vaccination requirement when they received a text sent by Defendant Kathy Beauregard around 6:00 p.m. on August 21, 2021. (ECF No. 1-2 PageID.20.) Western Michigan University (WMU or University) required individuals

associated with the athletic department, including student athletes, to provide proof of at least the first dose of a COVID-19 vaccine no later than August 31, 2021. The announcement indicated that "[m]edical and religious exemptions and accommodations would be considered on an individual basis." (*Id.*) The text did not provide any further explanation about exemptions or accommodations. The text did not identify any penalty or consequence for failing to provide proof of vaccination by the deadline. Plaintiffs plead that if they do not receive the required vaccinations, they will be removed from their positions on their teams and will not be permitted to participate in intercollegiate sports. (ECF No. 15 Compl. ¶ 41 PageID.333.) On the record before this Court, the text is the University's written vaccine requirement policy. Defendants have not filed any other document as the written policy. In her affidavit, Defendant Beauregard, in paragraphs 10 and 11, refers to the "policy" and quotes language from the text she sent on August 21.[1] (ECF No. 18-2 Beauregard Aff. ¶¶ 10-11 PageID.333.)

Plaintiffs plead that on August 23, having not received any information about the procedure for requesting an exemption or accommodation, they wrote to Defendants and asking that the procedure be disclosed. (Compl. ¶ 43 PageID.155.) The next day, Plaintiffs "received a link to the procedures." (*Id.* ¶ 44 PageID.155.)

Using the document supplied by WMU, each Plaintiff submitted a "Religious Accommodation Request Form." (*See, e.g.,* ECF No. 1-3 Otteson Request PageID.22.) Part 2 of the form gives WMU two options for a requested accommodation: approved and

---

[1] It is possible that Defendant Beauregard quotes some other document that is currently unknown to the Court. The affidavit does not identify any particular document as the "policy."

denied. WMU checked the line next to "denied" for each Plaintiff. Below that line, the form states "If the requested accommodation is denied, what are some alternative accommodations (list in order of preference):" WMU then wrote

1. Maintain Scholarship for 2021-2022
2. No participation in Intercollegiate sports
3. Comply with testing and masking mandate.

Near the bottom of the page, the form states "If no agreement on an accommodation, provide an explanation[.]" WMU gave the same explanation to each Plaintiff.

> The University has a compelling interest in taking action to avoid the significant risk posed to the intercollegiate athletic programs of a Covid-19 outbreak due to unvaccinated participants and prohibiting unvaccinated members of the teams from engaging in practices and competition is the only effective manner of accomplishing this compelling interest.

Plaintiffs plead that being vaccinated would violate their sincerely held religious beliefs. (Compl. ¶ 29 pageID.153.)

Plaintiffs sued when they learned that they would not be allowed to participate in intercollegiate sports if they did not violate their religious beliefs and receive a vaccination. Plaintiffs requested a temporary restraining order, which this Court granted. (ECF No. 7.) Defendants filed a response. (ECF No. 18.) Plaintiffs filed a reply. (ECF No. 21.) On September 9, 2021, the Court held a hearing to consider whether to convert the temporary restraining order to a preliminary injunction.

## II.

Rule 65 of the Federal Rules of Civil Procedure governs requests for preliminary injunctions. District court exercise their discretion when granting or denying preliminary injunctions. *Planet Aid v. City of St. Johns, Michigan*, 782 F.3d 318, 323 (6th Cir. 2015).

When deciding a motion for a preliminary injunction, a court should consider and balance four factors: (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) the balance of equities; and (4) whether granting injunctive relief services the public's interest. *Daunt v. Benson*, 956 F.3d 396, 406 (6th Cir. 2020). When a court considers the four factors as part of a constitutional challenge, "'the likelihood of success on the merits often will be the determinative factor.'" *Thompson v. DeWine*, 976 F.3d 610, 615 6th Cir. 2020) (quoting *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). The United States Supreme Court has stated that a preliminary injunction is an "extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 690 (2008) (citation omitted) that should "only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted).

### III.

The First Amendment to our Constitution provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend I. The latter phrase, the Free Exercise Clause, provides protections against laws that "discriminate against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993). The Supreme Court has held that the Fourteenth Amendment incorporates the First Amendment's protections against the states. *See Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)).

The Sixth Circuit has held that a Free Exercise Clause claim must be "predicated on coercion." *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) (quoting *Mozert v. Hawkins Cty. Bd. of Educ.*, 827 F.2d 1058, 1066 (6th Cir. 1963)). Plaintiffs can establish a Free Exercise claim by showing that WMU requires them to do an act that would violate their religious beliefs. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014) ("As the Court explained in a later case, the 'exercise of religion' involves 'not only belief and profession but the performance of (or abstention from) physical acts' that are 'engaged in for religious reasons.'") (quoting *Emp't Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990)); *Mozert*, 827 F.2d at 1066 ("It is clear that governmental compulsion either to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion, is the evil prohibited by the Free Exercise Clause."). The belief or conduct must be religious in the plaintiff's own scheme of things and must be sincerely held. *See Maye*, 915 F.3d at 1083.

Courts review Free Exercise claims under both rational and strict scrutiny. *See City of Hialeah*, 508 U.S. at 531. "When a challenged law is neutral and of general applicability and has a merely 'incidental effect' on Plaintiff's religious beliefs," courts review the claim under rational scrutiny. *Resurrection Sch. v. Hertel*, —4th—, 2021 WL 3721475, at *11 (6th Cir. Aug. 23, 2021) (citing *City of Hialeah*, 508 U.S. at 531); *accord Agudath Israel of America v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020) (explaining that, for a free exercise claim, a "neutral and generally applicable policy is subject only to rational-basis review"); *Bethel World Outreach Ministries v. Montgomery Cty. Council*, 706 F.3d 548, 561 (4th Cir. 2013) (same). Courts apply strict scrutiny to laws that burden religious practices when the

law lacks neutrality or is not generally applicable. *Monclova Christian Acad. v. Toledo-Lucas Cty. Health Dep't*, 984 F.3d 477, 479 (6th Cir. 2020) (quoting *City of Hialeah*, 508 U.S. at 546).

Discretionary denials of a request for a religious exemption to an otherwise neutral and generally applicable policy must be reviewed under the strict scrutiny standard. *See Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1877-78 (2021); *Meriwether v. Hartop*, 992 F.3d 492, 515 (6th Cir. 2012). In *Fulton*, our Supreme Court held that a law is not generally applicable when it "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." 141 S. Ct. at 1978 (cleaned up and quoting *Smith*, 494 U.S. at 884). The provision in dispute in *Fulton* gave the Commissioner "sole discretion" to grant an exception to an otherwise blanket prohibition. *Id.* The Court applied strict scrutiny to the Free Exercise claim reasoning that the City "may not refuse to extend that exemption system to cases of religious hardship without compelling reason." *Id.* at 1878 (cleaned up and quoting *Smith*, 949 U.S. at 884).

When courts apply strict scrutiny to a Free Exercise claim, the law must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest. *Fulton*, 141 S. Ct. at 1181; *City of Hialeah*, 508 U.S. at 531-32. Narrow tailoring requires the government to use the "least restrictive means" of achieving its goal. *Roberts v. Neace*, 958 F.3d 409, 415 (6th Cir. 2020); *see Saieg v. City of Dearborn*, 641 F.3d 727, 738 (6th Cir. 2011) (involving a free speech challenge and explaining that for narrow tailoring, the "regulation must not be 'substantially broader than necessary.'") (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989)). The government bears the burden of

6

establishing that its chosen course of action is narrowly tailored to serve a compelling government interest. *McGlone v. Bell*, 681 F.3d 718, 734 (6th Cir. 2012) (involving a free speech claim and explaining which party bears the burden of establishing narrow tailoring).

The Court concludes strict scrutiny applies to the WMU's denial of Plaintiffs' requests for religious exemptions. Defendants do not dispute that Plaintiffs' beliefs are religious in nature. Nor do they dispute that Plaintiffs' beliefs are sincerely held. Nor do they dispute Plaintiffs' contention that getting a COVID-19 vaccination would violate those sincerely held religious beliefs. By exercising discretion and denying the requested exemptions, exemptions identified in the policy, Defendants' policy was no longer generally applicable. Defendants' denials of the requested exemptions thus function to coerce Plaintiffs into violating their sincerely held religious beliefs.

Defendants contend that the vaccine requirement is a neutral and generally applicable policy that should be reviewed under rational scrutiny. Defendants insist that the policy is not riddled with exceptions. The policy contains only two exceptions, religious and medical. Defendants explain that when a student athlete fails to get a vaccination, he or she loses the scholarship and can have no association or affiliation with the team, including participation in intercollegiate sports. However, when a student athlete requests an accommodation, medical or religious, and the request is granted, that student athlete will not participate in intercollegiate sports but will maintain his or her scholarship and will continue to be listed as a player on the team website. (Beauregard Aff. ¶ 24 PageID.336.)

The Court declines to consider whether the policy, as described by Defendants in their brief and at the hearing, should be reviewed under rational or strict scrutiny. The policy

Defendants described is not the policy Defendants sent to their student athletes and enforced. The text message sent to student athletes did not include any criteria for the consideration of exemptions. Nor did the text message explain the consequences for granting or denying a requested exemption.[2] Contrary to Defendant Beauregard's affidavit, WMU did not grant the requested exemptions and permit the student athletes to keep their scholarships. WMU *denied* the requested exemptions and offered to allow the student athletes to keep their scholarships as an alternative accommodation. On the record before this Court, "the university's policy on accommodations was a moving target." *Meriwether*, 992 F.3d at 515. Student athletes were told that they could request a religious exemption. When they did, Defendants denied the requests and offered an alternative or compromise for the first time (keep the scholarship). That alternative was not identified in the "policy." That alternative was not disclosed on the "Religious Accommodation Request Form" until after Plaintiffs completed the form and submitted it to Defendants. On the sparse record before this Court, Defendants' policy appears to evolve and change in response to the constitutional challenge from Plaintiffs and the concerns identified by the Court in the Temporary Restraining Order.

Defendants also attempt to distinguish their policy from the one in *Fulton*. Defendants explain that the denial of religious and medical exemption requests are treated

---

[2] Defendants also point to a reservation of rights that all student athletes must sign, which does state that an athlete might forfeit a scholarship. (Beauregard Aff. ¶ 25 PageID.336.) That agreement does not save Defendants here. Reserving the right to establish and determine codes of conduct does not permit Defendants to impose conditions that coerce Plaintiffs into violating their religious beliefs. Nor does the reservation of rights somehow transform the denial of a request for a religious exemption into a generally applicable and neutral policy.

equally. Those student athletes who refuse vaccinations for either religious or medical reasons are permitted to keep their scholarships but are not permitted to participate in team activities. Defendants reason that religious and secular exemptions are treated the same. *See Fulton*, 141 S. Ct. at 1878 (explaining that in a system of individualized exemptions, a governmental entity may not "refuse to extend that system to cases of 'religious hardship' without a compelling reason.") (quoting *Smith*, 494 U.S. at 884).

The Court is not persuaded. First, as explained above, Defendants' description of their policy in the briefs and at the hearing differs from the language of the text message and the manner in which the policy was enforced. Second, as the Court interprets *Fulton*, the Supreme Court has expanded the prohibition against individualized exemptions. Certainly, Supreme Court authority pre-*Fulton* suggested limits on Free Exercise claims arising from a system of individualized exemptions to employment situations where the governmental entity refused to grant the exemption for religious reasons only. *See Smith*, 494 U.S. at 883 ("We have never invalidated any governmental action on the basis of the *Sherbert* test except the denial of unemployment compensation. Although we have sometimes purported to apply the *Sherbert* test in contexts other than that, we have always found the test satisfied[.]"). *Fulton* describes that prohibition more broadly. Rather than being limited to discretionary denial of exceptions for religious beliefs, a governmental policy is not generally applicable when it contains a discretionary basis for accepting or rejecting the otherwise general rule. "No matter the level of deference we extend to the City, the inclusion of a formal system of entirely discretionary exceptions in section 3.21 renders the contractual non-discrimination requirement not generally applicable." *Fulton*, 141 S. Ct. 1t 1878. And, the Court explained

that it is irrelevant whether any exception was ever granted. "That misapprehends the issue. The creation of a formal mechanism for granting exceptions renders the policy not generally applicable, regardless of whether any exceptions have been given, because it 'invites' the government to decide which reasons for not complying with the policy are worth of solicitude[.]" *Id.* at 1879 (cleaned up and quoting *Smith*, 494 U.S. at 884).

Next, Defendants argue that the Free Exercise Clause permits individualized consideration of requests for exemptions. Here, Defendants contend that a governmental entity can consider whether the purported beliefs are religious in nature and whether the beliefs are sincerely held. *See Maye*, 915 F.3d at 1083; *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987). The factual determination of whether a belief is religious and sincerely held is distinct from a discretionary decision. WMU can make a case-by-case determination whether the request is for a legitimate reason (religious or medical), without exercising any discretion to grant or deny the request. *See, e.g., 303 Creative LLC v. Elenis*, 6 F.4th 1160, 1187 (10th Cir. 2021) (finding Colorado's Anti-Discrimination Act to be a generally applicable law even though it contained exceptions and distinguishing between impermissible individualized exemptions from a permissible "individualized adjudication"). Here, WMU did not deny any request because it found that the Plaintiffs' beliefs were not religious or not sincerely held.

Defendants identify their compelling interests as the health of student athletes, and the University's reputation and finances. Defendants explain that if an intercollegiate sports team cannot field enough players, WMU would forfeit the game. The University would suffer financially, and its reputation would suffer. The compelling interests are not in dispute.

Relying on an affidavit from Dr. Gayle Ruggiero, Defendants assert that a vaccine requirement for student athletes is the most effective means of reducing the risk of transmission of COVID-19 between teammates and opponents. (ECF No. 18-1 Ruggiero Aff. ¶¶ 10 and 14 PageID.328.) An outbreak of COVID-19 in any particular sport would reasonably result in forfeited games and potentially the cancellation of an entire season. (*Id.* ¶ 13 PageID.328.)

Plaintiffs have established a likelihood of success on the merits of their Free Exercise claims. On this record, Defendants have not established that the vaccine requirement for student athletes is narrowly tailored. On this record, the vaccine requirement is not least restrictive means of achieving Defendants' compelling interests. Defendants defend the most effective means, but that is not what the law requires.

At the hearing, the parties agreed that WMU does not require vaccines for students who are not on athletic scholarship. Instead, those students who are not vaccinated must undergo weekly testing and must quarantine after a positive result. All students must wear masks while indoors. The parties also agreed that student athletes will interact with non-athlete students.

In the Court's view, Defendants have not established that policy used for non-athlete student athletes would be ineffective to achieve Defendants' compelling interests. *See United States v. Playboy Entm't Group, Inc.*, 529 U.S 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be *ineffective* to achieve its goals.") (italics added). And, "[a] court should not assume a plausible, less restrictive alternative would be

ineffective[.]" *Id.* at 824. The different approaches taken to student athletes and non-athlete student undermines Defendants' position that a vaccine requirement is necessary to achieve its compelling interest. Student athletes, regardless of whether they have been vaccinated, will interact with non-vaccinated non-athlete students. Presumably student athletes will sit next to unvaccinated students in class, they will eat with unvaccinated students in dining halls, they will worship with unvaccinated students, and they will socialize with unvaccinated students both on and off campus. It is even possible that some student athletes will live with unvaccinated students. Even if the University's mask requirement for indoor activities is strictly enforced, the likelihood that vaccinated student athletes will interact with unvaccinated student while not wearing masks is high.

Having found a likelihood of success on the merits of their constitutional claim, the Court need not consider the remaining three factors for a preliminary injunction.

## IV.

The Court will **GRANT** a preliminary injunction and enjoin Defendants from enforcing the vaccine requirement for student athletes during this litigation. On the record before this Court, Defendants' denial of Plaintiffs' requests for religious exemptions functions to coerce the Plaintiffs to act in a manner that violates their sincerely held religious beliefs. The denial of the requests for religious exemptions must be reviewed under strict scrutiny. And, Defendants have not established that the vaccine requirement is narrowly tailored such that it is the least restrictive means to achieve its compelling interests.

## ORDER

Consistent with the above Opinion,

1. The temporary restraining order issued on August 31, 2021, is terminated;

2. The Court **GRANTS** Plaintiffs' a preliminary injunction (ECF No. 2), which will remain in effect during this litigation unless otherwise ordered by this Court;

3. Defendants are enjoined from enforcing a COVID-19 vaccine requirement against Plaintiffs. Defendants may not prevent Plaintiffs from participating in team activities for the reason that Plaintiffs have not received a COVID-19 vaccine. So long as Plaintiffs have not received a COVID-19 vaccination, Defendants may require Plaintiffs to submit to COVID-19 testing weekly or more frequently and may also require Plaintiffs to wear face coverings during team activities.

**IT IS SO ORDERED.**


Date:  September 13, 2021             /s/ Paul L. Maloney
                                       Paul L. Maloney
                                       United States District Judge